UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

D.I.T., Inc.,

Debtor.
_______________________________________/

Case No. 14-23126-EPK
Chapter 7

MICHAEL R. BAKST, not individually but as Chapter 7 Trustee,

Plaintiff,

v.

Adv. No. 16-01214-EPK

BANK LEUMI, USA, a New York state chartered bank,

Defendant.
_______________________________________/

**BANK LEUMI'S MOTION TO STRIKE JURY DEMAND**

Defendant Bank Leumi, USA (**"Bank Leumi"**) moves pursuant to Rule 9015 of the Federal Rules of Bankruptcy Procedure and Rule 39(a)(2) of the Federal Rules of Civil Procedure, to strike the jury demand (ECF No. 64) (the **"Jury Demand"**) made by Plaintiff, Michael R. Bakst as Chapter 7 Trustee (the **"Trustee"**).

**Preliminary Statement**

1. The Court must strike the Trustee's jury demand because (1) the Trustee is bound by the Debtor's prepetition contractual waiver of jury trial rights; (2) a bankruptcy trustee is never entitled to a jury trial in avoidance action; and (3) this adversary proceeding is integral to the claims resolution process, for which there is no right to a jury trial.

**Background**

2. On June 6, 2014, the Debtor, D.I.T., Inc. (**"DIT"** or the **"Debtor"**) filed a voluntary Chapter 11 petition in this Court (Main Case ECF No. 1). DIT's Chapter 11 case was then converted to a Chapter 7 liquidation on November 12, 2014 (Main Case ECF No. 87), and Michael R, Bakst was appointed as Trustee (Main Case ECF No. 99).

3. On May 6, 2016, the Trustee filed an *Adversary Complaint to Avoid and Recover Avoidable Transfers* (ECF No. 1) (the **"Original Complaint"**) against Bank Leumi, a pre-petition secured lender to DIT, seeking to avoid and recover approximately $13 million in regular payments under and payoff of a commercial loan. After Bank Leumi moved to dismiss the Original Complaint, the Trustee filed a *First Amended Adversary Complaint to Avoid and Recover Avoidable Transfers and Demand for Jury Trial* (ECF No. 14) (the **"First Amended Complaint"**) on June 28, 2016.

4. Bank Leumi moved to dismiss the First Amended Complaint (ECF No. 18), and on December 22, 2016, the Court entered an *Order Granting Defendant's Motion to Dismiss* (ECF No. 44), dismissing the First Amended Complaint with prejudice. On January 5, 2017, however, the Trustee filed a *Motion for Leave to File Second Amended Complaint* (ECF No. 47) and a *Motion to Alter, Amend, and/or for Reconsideration and/or Relief from Order Granting Defendant's Motion to Dismiss* (ECF No. 48). After a hearing on March 1, 2017, the Court entered an *Order Granting in Part Motion to Reconsider and Granting Motion for Leave to File Second Amended Adversary Complaint* (ECF No. 65), in which it permitted the Trustee to file a second amended complaint.

5. Accordingly, on March 3, 2017, the Trustee filed his *Second Amended Adversary Complaint to Avoid and Recover Avoidable Transfers and Demand for Jury Trial* (ECF No. 64) (the **"Second Amended Complaint"**). While alleging four counts, the Second Amended

Complaint really asserts only one cause of action – avoidance and recovery of DIT's loan payments and ultimate payoff to Bank Leumi.[1]

## ARGUMENT

### I. THE TRUSTEE IS BOUND BY DIT'S CONTRACTUAL WAIVER OF JURY TRIAL RIGHTS.

6. As alleged in the Second Amended Complaint, Bank Leumi was a pre-petition secured lender to DIT, under both a term loan and a revolving credit agreement. DIT expressly waived its jury trial rights in the loan documents for both of those loans. For example, the July 1, 2011 Promissory Note (Grid) (the note for the revolving credit agreement, a copy of which is attached as **Exhibit 1**) states "**In the event of litigation between the Bank and the maker over any matter connected with this Note or resulting from transactions hereunder, the right to a jury trial is hereby waived by the Bank and the maker.**" Similarly, the June 28, 2011 Installment Promissory Note (the note for the term loan, a copy of which is attached as **Exhibit 2**) states: "**In the event of litigation between the Bank and the Borrower over any matter connected with this Note or resulting from transactions hereunder, the right to a trial by jury is hereby waived by the Bank and the Borrower.**"

7. The Trustee is bound by the Debtor's pre-petition jury trial waiver. *Kapila v. Bank of America (In re Pearlman)*, 493 B.R. 878, 883-885 (Bankr. M.D. Fla. 2013); *Herendeen v. Synovus Bank (In re Able Body Temp. Servs., Inc.)*, No. 8:15-cv-644-T-24, 2015 WL 3453748, at *6 (M.D. Fla. May 29, 2015); *Herendeen v. Synovus Bank (In re Organized Confusion, LLP)*, No. 8:14-cv-3226-T-24, 2015 WL 728223, at *6 (M.D. Fla. Feb. 19, 2015); *Adelphia Recovery Trust v. Bank of America, N.A.*, No. 05 Civ. 9050 (LMM), 2009 WL 2031855, at *3-5 (S.D.N.Y.

[1] Counts I, II, and III seek the same relief, just under different choices of law, and Count IV is admittedly plead as "an effectuating count whereby to whatever extent the Court deems it necessary for the Trustee to specifically seek to recover any avoided transfer pursuant to a separately pled count, this count is being separately pled."

July 8, 2009). Accordingly, because DIT waived its jury trial rights, the Trustee is bound by that waiver and is not entitled to a jury trial.

## II. A BANKRUPTCY TRUSTEE IS NEVER ENTITLED TO A JURY TRIAL IN AN AVOIDANCE ACTION.

8. Even if DIT did not waive its jury trial rights, the Trustee still would not be entitled to a jury trial because a bankruptcy trustee is never entitled to a jury trial in an avoidance action. *Pearlman*, 493 B.R. at 888; *see U.S. Bank Nat'l Assn. v. Verizon Commc'ns., Inc.*, 761 F.3d 409, 420-25 (5th Cir. 2014) (citing *In re Jensen*, 946 F.2d 369, 374 (5th Cir. 1991), *abrogated on other grounds, In re El Paso Elec. Co.*, 77 F.3d 793, 794 (5th Cir. 1996), *In re Hallahan*, 936 F.2d 1496, 1505 (7th Cir. 1991), and *Langenkamp v. Culp*, 498 U.S. 42 (1990)); *cf. Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir. 1993) (debtor waives jury trial rights upon filing for bankruptcy); *Mid Am. Concrete Constr., Inc. v. Sears Roebuck & Co.*, No. 91 C 6286, 1993 WL 177140, at *3 (Bankr. N.D. Ill. May 6, 1993). *But see Mukamal v. BMO Harris Bank, N.A. (In re Palm Beach Fin. Partners)*, 501 B.R. 792, 807 (Bankr. S.D. Fla. 2013) (bankruptcy trustee is entitled to jury trial in avoidance action).

9. Although Judge Hyman in *Palm Beach Finance Partners* reached a different conclusion than in *Pearlman*, he noted that "[t]he *Pearlman* Court also held that the trustee was not entitled to a jury trial because the trustee was bound by the jury trial waiver contained in the contractual agreement between the debtor and the defendant," a factor that was not present in *Palm Beach Finance Partners*. 501 B.R. at 802 n.5 (citing *Pearlman*, 493 B.R. at 884-885).

10. Further, as noted by the Fifth Circuit in *U.S. Bank*, the notion that a bankruptcy trustee can never have a right to jury trial in an avoidance action is consistent with the Supreme Court's holding in *Langenkamp*, which held that a creditor submitting a proof of claim waives its jury trial rights in a preference action. *U.S. Bank*, 761 F.3d at 420. "[I]f creditors lose their jury

trial rights by presenting claims against the estate, 'debtors who initially choose to invoke the bankruptcy court's jurisdiction to seek protection from their creditors cannot be endowed with any stronger right.'" *Id.* (quoting *Jensen*, 946 F.2d at 374 (quoting *Hallahan*, 936 F.2d at 1505)).[2]

11. Thus, because a trustee is never entitled to a jury trial in an avoidance action, the Jury Demand must be stricken on this basis as well.

## III. THIS ADVERSARY PROCEEDING IS INTEGRAL TO THE CLAIMS RESOLUTION PROCESS, FOR WHICH THERE IS NO RIGHT TO A JURY TRIAL.

12. Finally, the Court should also strike the Jury Demand because resolution of this adversary proceeding is integral to the claims resolution process, for which there is no right to a jury trial. *See Official Employment-Related Issues Committee of Enron Corp. v. Lavorato (In re Enron Corp.)*, 319 B.R. 122, 126 (Bankr. S.D. Tex. 2004) (by commencing an avoidance action, the estate representative effectively invokes the equitable claims allowance process, for which there is no jury trial right); *see also Citicorp N. Am., Inc. v. Finley (In re Washington Mfg. Co.)*, 128 B.R. 198, 202 (Bankr. M.D. Tenn. 1991) (trustee's fraudulent transfer counterclaim is part of the claims allowance process). This notion applies even where a defendant has not filed a proof of claim. *Enron*, 319 B.R. at 125. This is so because an avoidance action defendant that satisfies the judgment is entitled to a claim against the estate under Section 502(h). Here, if the Trustee is successful in this adversary proceeding, Bank Leumi could assert a Section 502(h) claim that would nearly double the existing claims pool, which clearly affects the claims resolution process and any eventual distribution to creditors.

[2] The fact that Bank Leumi could demand a jury trial, however, does not change this result. *See Mid Am. Concrete Constr., Inc.*, 1993 WL 177140, at *3 ("That only one party in this adversary proceeding has a right to demand a jury trial is not a unique situation") (citing *Rachal v. Ingram Corp.*, 795 F.2d 1210, 1215 (5th Cir. 1986)).

## Conclusion

13. Whether due to DIT's pre-petition waiver, the impact on the claims resolution process, or because a trustee is never entitled to a jury trial in avoidance action, the Court must strike the Trustee's Jury Demand.

WHEREFORE, Bank Leumi requests that the Court strike the Trustee's Jury Demand, and grant Bank Leumi such other relief as justice and equity require.

Dated June 15, 2017.

Respectfully submitted,

GREENBERG TRAURIG, P.A.
*Counsel for Defendant*

*/s/ Scott M. Grossman*
SCOTT M. GROSSMAN
Florida Bar No. 0176702
grossmansm@gtlaw.com
401 E. Las Olas Blvd., Suite 2000
Fort Lauderdale, FL 33301
954-765-0500

-and-

C. WADE BOWDEN
(*admitted pro hac vice*)
Florida Bar No. 0090735
bowdenw@gtlaw.com
777 South Flagler Drive, Suite 300 East
West Palm Beach, FL 33401
561-650-7900

-and-

ARI NEWMAN
Florida Bar No. 56575
newmanar@gtlaw.com
333 S.E. 2nd Avenue, Suite 4400
Miami, FL 33131
305-579-0500

**CERTIFICATE OF SERVICE**

      I CERTIFY that on June 15, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF, or by first class U.S. mail on those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                      */s/ Scott M. Grossman*
                                      Scott M. Grossman

**Electronic Mail Service List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this adversary proceeding:

Rilyn A Carnahan, Esq. on behalf of Plaintiff Michael Bakst: rilyn.carnahan@gmlaw.com, efileu1092@gmlaw.com; efileu1089@gmlaw.com; melissa.bird@gmlaw.com; efileu1435@gmlaw.com; efileu1094@gmlaw.com; efileu1093@gmlaw.com; gregory.stolzberg@gmlaw.com

David C. Cimo, Esq. on behalf of Plaintiff Michael Bakst: dcimo@gjb-law.com, gjbecf@gjb-law.com

Scott M. Grossman, Esq. on behalf of Defendant Bank Leumi, USA grossmansm@gtlaw.com, scottla@gtlaw.com; MiaLitDock@gtlaw.com; FTLLitDock@GTLaw.com; miaecfbky@gtlaw.com

Barry P Gruher on behalf of Plaintiff Michael Bakst bgruher@gjb-law.com, vlambdin@gjb-law.com;gjbecf@gjb-law.com;cesser@gjb-law.com;chopkins@gjb-law.com

Ari Newman, Esq. on behalf of Defendant Bank Leumi, USA newmanar@gtlaw.com, crossmann@gtlaw.com; mialitdock@gtlaw.com; miaecfbky@gtlaw.com

**Manual Service List**

The following is the list of **parties** who are **not** on the list to receive email notice/service for this adversary proceeding (and who therefore require manual noticing/service): None.



BANK LEUMI USA
MEMBER FDIC

**THIS NOTE REPLACES IN PART AND SUPERCEDES THAT CERTAIN PROMISSORY NOTE (GRID) DATED AS OF SEPTEMBER 1, 2009.**

**PROMISSORY NOTE (GRID)**

New York, N.Y.
Dated as of July 1, 2010 $4,400,000.00

For Value Received we promise(s) to pay to the order of BANK LEUMI USA (the "Bank"), at its offices at 562 Fifth Avenue, New York, NY 10036 the principal sum of Four Million Four Hundred Thousand and 00/100 Dollars ("Maximum Principal Amount") or, if less, the aggregate unpaid principal sum of all loans made by the Bank, in its sole discretion, to the maker of this Note from time to time. The principal sum of each such loan shall be payable on demand. If no demand is made, then all amounts due hereunder shall be paid no later than August 1, 2010.

Within the limits of the Maximum Principal Amount, the maker may borrow, prepay, and reborrow in the manner provided herein.

Each loan shall bear interest (from the date of such loan) at a rate per annum which shall be equal to 3/4% per annum above the rate of interest designated by the Bank, and in effect from time to time, as its "Reference Rate", adjusted when said Reference Rate changes. (The maker acknowledges that the Reference Rate may not necessarily represent the lowest rate of interest charged by the Bank to customers.) **Notwithstanding anything contained herein to the contrary at no time shall the rate of interest charged by the Bank hereunder be less than 4.5%**

The Bank is hereby authorized to enter on the schedule attached hereto the amount of each loan and each payment of principal thereon, without any further authorization on the part of the maker or any guarantor of this Note, but the Bank's failure to make such entry shall not limit or otherwise affect the obligations of the maker or any guarantor of this Note. In the event that any other Liabilities (as hereinafter defined) of maker to the Bank are due at any time that the Bank receives a payment from maker on account of this Note or any such other Liabilities of maker, the Bank may apply such payments to amounts due under this Note or any such other Liabilities in such manner as the Bank, in its discretion, elects, regardless of any instructions from maker to the contrary.

The maker and each guarantor of this Note acknowledge and agree that the use of this form of note is for their convenience, and there is no obligation on the part of the Bank to make loans to the maker whatsoever.

Interest shall be computed on the basis of a 360-day year and shall be payable at the end of each month and on demand. In no event shall interest exceed the maximum legal rate permitted for the maker.

EXHIBIT 1

Each maker authorizes (but shall not require) the Bank to debit any account maintained by the maker with the Bank, at any date on which the payment of principal or of interest on any of the Liabilities is due, in an amount equal to any unpaid portion of such payment. If the time for payment of principal of or interest on any of the Liabilities or any other money payable hereunder or with respect to any of the Liabilities becomes due on a day on which the Bank's offices are closed (as required or permitted by law or otherwise), such payment shall be made on the next succeeding business day, and such extension shall be included in computing interest in connection with such payment. All payments by any maker of this Note on account of principal, interest or fees hereunder shall be made in lawful money of the United States of America, in immediately available funds.

All Property (as hereinafter defined) held by the Bank shall be subject to a security interest in favor of the Bank or holder hereof as security for any and all Liabilities. The term "Property" shall mean the balance of every deposit account of the maker with the Bank or any of the Bank's nominees or agents and all other obligations of the Bank or any of its nominees or agents to the maker, whether now existing or hereafter arising, and all other personal property of the maker (including without limitation all money, accounts, general intangibles, goods, instruments, documents and chattel paper) which, or evidence of which, are now or at any time in the future shall come into the possession or under the control of or be in transit to the Bank or any of its nominees or agents for any purpose, whether or not accepted for the purposes for which it was delivered. The term "Liabilities" shall mean the indebtedness evidenced by this Note and all other indebtedness, liabilities and obligations of any kind of the maker (or any partnership or other group of which the maker is a member) to (a) the Bank, (b) any group of which the Bank is a member, or (c) any other person if the Bank has a participation or other interest in such indebtedness, liabilities or obligations, whether (i) for the Bank's own account or as agent for others, (ii) acquired directly or indirectly by the Bank from the maker or others, (iii) absolute or contingent, joint or several, secured or unsecured, liquidated or unliquidated, due or not due, contractual or tortious, now existing or hereafter arising, or (iv) incurred by the maker as principal, surety, endorser, guarantor or otherwise, and including without limitation all expenses, including attorneys' fees, incurred by the Bank in connection with any such indebtedness, liabilities or obligations or any of the Property (including any sale or other disposition of the Property).

After demand for payment, any unpaid balance hereof shall bear interest from the date it becomes due until paid at a rate per annum 3% above the rate borne by this Note when it becomes due or, if such rate shall not be lawful with respect to the undersigned, then at the highest lawful rate. The liability of any party to commercial paper held by the Bank or holder hereof, other than the makers hereof, shall remain unaffected hereby and such parties shall remain liable thereon in accordance with the original tenor thereof. Each maker agrees that if an attorney is retained to enforce or collect this Note or any other obligations by reason of non-payment of this Note when due or made due hereunder, a reasonable attorneys' fee shall be paid in addition, which fees shall be computed as follows: 15% of the principal, interest and all other sums due and owing to the payee or holder or the reasonable value of the attorneys' services, whichever is greater.

This Note shall be governed by the laws of the State of New York and shall be binding upon the maker and the maker's heirs, administrators, successors and assigns. **The maker hereby irrevocably consents to the jurisdiction of any New York State or Federal court located in New York City over any action or proceeding arising out of any dispute between the maker and the Bank, and the maker further irrevocably consents to the service of process in any such action or proceeding by the mailing of a copy of such process to the maker at the address set forth below. In the event of litigation between the Bank**

**and the maker over any matter connected with this Note or resulting from transactions hereunder, the right to a trial by jury is hereby waived by the Bank and the maker. The maker also waives the right to interpose any set-off or counterclaim of any nature.** The Bank or any holder may accept late payments, or partial payments, even though marked "payment in full" or containing words of similar import or other conditions, without waiving any of its rights. No amendment, modification or waiver of any provision of this Note nor consent to any departure by maker therefrom shall be effective, irrespective of any course of dealing, unless the same shall be in writing and signed by the Bank, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

The rights and remedies of the Bank provided for hereunder (including but not limited to the right to accelerate Liabilities of maker and to realize on any security for any such Liabilities) are cumulative with the rights and remedies of the Bank available under any other instrument or agreement or under applicable law.

The undersigned, if more than one, shall be jointly and severally liable hereunder.

D.I.T., Inc.
(Name of maker)

By: ____________

680 South Military Trail
Deerfield Beach, FL 34432
(Address)

DIT Healthcare Distribution Inc.

By: ____________

680 South Military Trail
Deerfield Beach, FL 34432
(Address)

PHARMA RX HEALTH INC.

By: ____________

680 South Military Trail
Deerfield Beach, FL 34432
(Address)



BANK LEUMI USA
MEMBER FDIC

THIS NOTE REPLACES AND SUPERCEDES THAT CERTAIN INSTALLMENT PROMISSORY NOTE DATED DECEMBER 22, 2009.

NOTE: *Fill in all blanks before signing. If a particular provision is not desired or has no applicability, delete the provision or, if it contains a blank space, insert "N/A" or the words "Not Applicable" in such space. All deletions should be initialled by the Borrower and the Bank.*

**INSTALLMENT PROMISSORY NOTE**
**(With Amortization of Principal and Interest)**

New York, N.Y.

$1,400,000.00

Dated as of June 28, 2011

## A. GENERAL; TERMS OF PAYMENT

1. FOR VALUE RECEIVED, the undersigned, D.I.T., Inc., a corporation organized under the laws of the State of Florida (the "Borrower"), hereby promise(s) to pay to the order of BANK LEUMI USA (the "Bank"), at its office at 562 Fifth Avenue, New York, New York 10036 the principal sum of One Million Four Hundred Thousand and 00/100 Dollars ($1,400,000.00) in eleven (11) installments of principal and interest, to be paid on the dates and in the amounts set forth in the following schedule:

| Date Payment Due | Principal Amount of Payment |
|---|---|
| July 1, 2011 | $116,666.67 |
| October 1, 2011 | $116,666.67 |
| January 1, 2012 | $116,666.67 |
| April 1, 2012 | $116,666.67 |
| July 1, 2012 | $116,666.67 |
| October 1, 2012 | $116,666.67 |
| January 1, 2013 | $116,666.67 |
| April 1, 2013 | $116,666.67 |
| July 1, 2013 | $116,666.67 |
| October 1, 2013 | $116,666.67 |
| January 1, 2014 | $116,666.67 |
| April 1, 2014 | $116,666.63 |
| Total | $1,400,000.00 |

The undersigned shall also pay interest on the unpaid principal amount hereof from time to time outstanding, computed on the basis of a 360-day year, at a rate per annum which shall be equal to two (2)% per annum above the rate of interest designated by the Bank, and in effect from time to time, as its "Reference Rate", adjusted when said Reference Rate changes. (The Borrower acknowledges that the Reference Rate may not necessarily represent the lowest rate of interest charged by the Bank to customers.)

EXHIBIT 2

In addition, the Borrower will pay interest on any overdue installment of principal for the period for which overdue, on demand, at a rate equal to 3% per annum above the rate of interest hereinabove indicated.

In no event shall interest exceed the maximum legal rate permitted by law, and in event shall the rate of interest charged by the Bank ever by less than 4.5%.

2. All Property (as hereinafter defined) held by the Bank shall be subject to a security interest in favor of the Bank as security for any and all Liabilities (as hereinafter defined). The term "Property" shall mean the balance of every deposit account of the Borrower with the Bank or any of the Bank's nominees or agents and all other obligations of the Bank or any of its nominees or agents to the Borrower, whether now existing or hereafter arising, and all other personal property of the Borrower (including without limitation all money, accounts, general intangibles, goods, instruments, documents and chattel paper) which, or evidence of which, are now or at any time in the future shall come into the possession or under the control of or be in transit to the Bank or any of its nominees or agents for any purpose, whether or not accepted for the purposes for which it was delivered. The term "Liabilities" shall mean the indebtedness evidenced by this Note and all other indebtedness, liabilities and obligations of any kind of the Borrower (or any partnership or other group of which the Borrower is a member) to (a) the Bank, (b) any group of which the Bank is a member, or (c) any other person if the Bank has a participation or other interest in such indebtedness, liabilities or obligations, whether (i) for the Bank's own account or as agent for others, (ii) acquired directly or indirectly by the Bank from the Borrower or others, (iii) absolute or contingent, joint or several, secured or unsecured, liquidated or unliquidated, due or not due, contractual or tortious, now existing or hereafter arising, or (iv) incurred by the Borrower as principal, surety, endorser, guarantor or otherwise, and including without limitation all expenses, including attorneys' fees, incurred by the Bank in connection with any such indebtedness, liabilities or obligations or any of the Property (including any sale or other disposition of the Property).

3. *Prepayment.* Provided there is no default under the Note, nor any event which with the giving of notice or passage of time would be such a default, principal may be prepaid at any time. Any such prepayment of this Note, in whole or in part, shall be subject to, and must be accompanied by, a prepayment penalty (the "Prepayment Fee") equal to one percent (1%) of the then principal balance outstanding for each Loan Year (defined below), or part thereof, that such prepayment is made prior to the then stated Maturity Date of this Note. By way of example, if the stated Maturity Date of this Note is December 21, 2010 and a prepayment is made on October 31, 2007, there shall be a prepayment penalty of four percent (4%) of the prepaid amount.

Any prepayment shall be in a minimum principal amount of $25,000.00 or any whole multiple thereof, in each case upon not less than 10 days prior written notice to the Bank, provided that on each prepayment the Borrower shall pay accrued interest on the principal amount so prepaid through the date of such prepayment, and each partial prepayment shall be applied to the installments of this Note in the inverse order of their stated maturities. A "Loan Year" shall be each successive 12-month period commencing on the date of this Note.

The Prepayment Fee shall be due and payable on each prepayment made during the term of the Note, whether voluntary or involuntary, or as a result of acceleration of the scheduled Maturity Date by reason of default, except that payments made by application of casualty or condemnation proceeds from the Property, and timely payments of scheduled amortization

payments of principal, shall not be considered prepayments hereunder.

4. *Manner of Payment.* All payments by the Borrower on account of principal, interest or fees hereunder shall be made in lawful money of the United States of America, in immediately available funds. The Borrower authorizes (but shall not require) the Bank to debit any account maintained by the Borrower with the Bank, at any date on which a payment is due under this Note, in an amount equal to any unpaid portion of such payment. If any payment of principal or interest becomes due on a day on which the Bank is closed (as required or permitted by law or otherwise), such payment shall be made not later than the next succeeding business day except as may be otherwise provided herein, and such extension shall be included in computing interest in connection with such payment. In the event that any other Liabilities of the Borrower to the Bank are due at any time that the Bank receives a payment from the Borrower on account of this Note or any such other Liabilities of the Borrower, the Bank may apply such payments to amounts due under this Note or any such other Liabilities in such manner as the Bank, in its discretion, elects, regardless of any instructions from the Borrower to the contrary. The Bank or any holder may accept late payments, or partial payments, even though marked "payment in full" or containing words of similar import or other conditions, without waiving any of its rights.

## B. EVENTS OF DEFAULT: REMEDIES

Upon the happening, with respect to the Borrower or any guarantor of this Note or any assets of any such Borrower or guarantor, of any of the following events (each an "Event of Default"): death of the Borrower or any guarantor or any member of the Borrower or guarantor (if a partnership); the failure to furnish the Bank with any requested information or failing to permit inspection of books or records by the Bank or any of its agents; the making of any misrepresentation to the Bank in obtaining credit for any of them; dissolution (if a corporation or partnership); the making of a mortgage or pledge; the commencement of a foreclosure proceeding; default in the payment of principal or interest on this Note or in the performance or observance of any covenant or agreement contained herein or in the payment of any other obligation of the Borrower or guarantor held by the Bank or holder hereof or in the performance or observance of any covenant or agreement contained in the instrument evidencing such obligation; default in the payment of principal of or interest on any indebtedness for borrowed money owed to any other person or entity (including any such indebtedness in the nature of a lease) or default in the performance or observance of the terms of any instrument pursuant to which such indebtedness was created or is secured, the effect of which default is to cause or permit any holder of any such indebtedness to cause the same to become due prior to its stated maturity (and whether or not such default is waived by the holder thereof); a change in the financial condition or affairs of any of them which in the opinion of the Bank or subsequent holder hereof materially reduces his, their or its ability to pay all of his, their or its obligations; the suspension of business; the making of an assignment for the benefit of creditors, or the appointment of a trustee, receiver or liquidator for the Borrower or any guarantor or for any of his, its or their property, or the commencement of any proceedings by the Borrower or any guarantor under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt, receivership, liquidation or dissolution law or statute (including, if the Borrower or any guarantor is a partnership, its dissolution pursuant to any agreement or statute), or the commencement of any such proceedings without the consent of the Borrower or guarantor, as the case may be, and such proceedings shall continue undischarged for a period of 30 days; the sending of notice of an intended bulk sale; the entry of judgments or any attachment, levy or

execution against any of his, their or its properties shall not be released, discharged, dismissed, stayed or fully bonded for a period of 30 days or more after its entry, issue or levy, as the case may be; or the issuance of a warrant of distraint or assertion of a lien for unpaid taxes, this Note, if not then due or payable on demand, shall become due and payable immediately without demand or notice and all other debts or obligations of the Borrowers hereof to the Bank or holder hereof, whether due or not due and whether direct or contingent and howsoever evidenced, shall, at the option of the Bank or holder hereof, also become due and payable immediately without demand or notice.

The balance of every account of the Borrower with, and each claim of the Borrower against the Bank existing from time to time shall be subject to a lien and subject to be set off against any and all Liabilities, including those hereunder.

## C. MISCELLANEOUS

1. *Covenants.* So long as this Note shall remain outstanding, the Borrower agrees to (a) furnish to the Bank within 90 days after the end of each fiscal year of the Borrower, financial statements (including a balance sheet and an operating statement), prepared and certified by independent accountants acceptable to the Bank, and within 45 days after the end of each fiscal quarter of the Borrower, unaudited quarterly financial statements (including a balance sheet and an operating statement), (b) furnish to the Bank personal financial statements or business financial statements, as applicable, satisfactory in form in all respects to the Bank, (c) furnish to the Bank, with reasonable promptness, such other information concerning the business, operations, properties and condition, financial or otherwise, of the Borrower as the Bank may reasonably request from time to time, and (d) at any reasonable time and from time to time, permit the Bank or any of its agents or representatives to examine and make copies of and abstracts from its records and books of account visit its properties and discuss its affairs, finances and accounts with any of its officers, directors or independent accountants.

2. *No Waiver; Remedies Cumulative.* No failure on the part of the Bank to exercise, and no delay in exercising any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise by the Bank of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by any other instrument or document or under applicable law.

3. *Costs and Expenses.* The Borrower shall reimburse the Bank for all costs and expenses incurred by it and shall pay the reasonable fees and disbursements of counsel to the Bank in connection with enforcement of the Bank's rights hereunder. The Borrower shall also pay any and all taxes (other than taxes on or measured by net income of the holder of this Note) incurred or payable in connection with the execution and delivery of this Note.

4. *Amendments.* No amendment, modification or waiver of any provision of this Note nor consent to any departure by the Borrower therefrom shall be effective unless the same shall be in writing and signed by the Bank and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

5. *Construction.* This Note shall be deemed to be a contract made under the laws of the State of New York and shall be construed in accordance with the laws of said State.

6. *Successors and Assigns.* This Note shall be binding upon the Borrower and its heirs, legal representatives, successors and assigns and the terms hereof shall inure to the benefit of the Bank and its successors and assigns, including subsequent holders hereof.

7. *Severability.* The provisions of this Note are severable, and if any provision shall be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall not in any manner affect such provision in any other jurisdiction or any other provision of this Note in any jurisdiction.

8. *Joint and Several Liability.* The undersigned, if more than one, shall be jointly and severally liable hereunder.

**9. *Jurisdiction; Waiver of Jury Trial.* The Borrower hereby irrevocably consents to the jurisdiction of any New York State or Federal court located in New York City over any action or proceeding arising out of any dispute between the Borrower and the Bank, and the Borrower further irrevocably consents to the service of process in any such action or proceeding by the mailing of a copy of such process to the Borrower at the address set forth below. In the event of litigation between the Bank and the Borrower over any matter connected with this Note or resulting from transactions hereunder, the right to a trial by jury is hereby waived by the Bank and the Borrower. The Borrower also waives the right to interpose any set-off or counterclaim of any nature.**

D.I.T., Inc.
(Name of Borrower)

By: [signature]
Name: Emanuel Cohen Title: President

680 South Military Trail
Deerfield Beach, Florida 34432
(Address)

D.I.T. Healtcare Distribution Inc.
(Name of Borrower)

By: [signature]
Name: Emanuel Cohen Title: President

680 South Military Trail
Deerfield Beach, Florida 34432
(Address)

Pharma RX Health Inc.
(Name of Borrower)

By:________________________________
Name: Emanuel Cohen Title:

680 South Military Trail
Deerfield Beach, Florida 34432
(Address)

[Corporate Seal]